*351 JUDGMENT
WILLIAM BOSSMAN, Chief Judge.
INTRODUCTION
The petitioner challenges the manner in which she was removed as a member of the Ho-Chunk Nation pursuant to the Tribal Enrollment and Membership Act of 1995 [hereinafter TEMA] and the Ineligible Tribal Members Removal Procedures [hereinafter ITMRP]. This case is the first of its type and presents new questions on how to treat challenges to Tribal membership in a manner consistent, with the HCN Constitution. Appearances: Gerald Fox representing the petitioner, Wendy Helgemo representing the respondent. Oral Argument was heard in this case on February 15, 2001.[1]
PROCEDURAL HISTORY
This case began with the filing of an affidavit from Adam J. Hall, HCN Tribal Enrollment Officer on October 28, 1998, which stated that there was reason to believe an error had been made in considering Theresa Hendrickson as a member of the Ho-Chunk Nation. See ITMRP § 1.04. Ms. Hendrickson had been enrolled since 1976 when she was four years old. On November 12, 1998 a hearing was held before the Tribal Enrollment Committee pursuant to ITMRP. Based on the evidence brought forth at the healing Ms. Hendrickson was tentatively removed as a member of the Ho-Chunk Nation. Her removal will not be finalized unless the General Council ratifies this action within one year of the final removal action.
On February 9, 1999 Ms. Hendrickson initiated this appeal of the Committee of Tribal Enrollment decision removing her name from the membership roll of the Ho-Chunk Nation by filing her Petition for Review. On October .12, 1999, the Court entered an Order (Standard, of Review). The Court determined that the proper standard of review for the consideration of fundamental procedural interests in the Enrollment Hearing was strict scrutiny. The Court also determined that once the Office of Tribal Enrollment satisfies procedural due process the Court will apply the standard of review of whether the decision is supported by substantial evidence and is not arbitrary, capricious or an abuse of discretion. The Court also ordered the Committee on Tribal Enrollment to make a complete record of all the material it considered in rendering its decision.
On September 12, 2000, the Enrollment Committee rendered a final decision denying the petitioner’s claim to membership in the Ho-Chunk Nation. The petitioner filed for judicial review on September 29, 2000. The parties filed briefs, and Oral Argument was held on February 15, 2001. The Court now enters this Judgment finding that the decision of the Tribal Enrollment Committee was not supported by substantial evidence and is arbitrary, capricious and an abuse of discretion.
APPLICABLE LAW
HO-CHUNK NATION CONSTITUTION
ARTICLE 11—M EMBERSI 111 ’
Section 1. Requirements. The following persons shall be eligible for membership in the Ho-Chunk Nation, provided, that such persons are not enrolled members of any other Indian nation:
*352 (a) All persons of Ho-Chunk blood whose names appear or are entitled to appear on the official census roll prepared pursuant to the Act of January 18, 1881 (21 Stat. 315), or the Wisconsin Winnebago Annuity Payroll for the year one thousand nine hundred and one (1901); or the Act of January 20, 1910 (36 Stat. 873), or the Act of July 1, 1912 (37 Stat. 187); or
(a) All descendants of persons listed in Section 1(a), provided, that such persons are at least one-fourth (1/4) Ho-Chunk blood.
Section 2. Relinquishment of Membership and Re-enrollment. Enrollment in any other Indian Nation shall constitute voluntary relinquishment of membership. Adult members may relinquish their membership or the membership of their minor children. Relinquishment of membership shall be done in writing. Any adult member who has voluntarily requested to be removed from the membership roll shall not be eligible for re-enrollment. Any minor whose membership has been relinquished by a parent shall be eligible for re-enrollment upon reaching the age of eighteen (18).
Section 3. Adoption by General. Any person at least one-fourth (1/4) Ho-Chunk blood who does not meet the requirements of Section 1 of this Article may be adopted into membership by a two-thirds (2/3) vote of the General Council, provided, that such individual is not an enrolled member of any other Indian nation.
Section 4. Membership Roll. The Legislature shall maintain one official roll of all tribal members.
Section 5. Membership Code. The Legislature shall have the power to enact laws not inconsistent with this Article to govern membership. Removal of any person who is not eligible for membership from the Membership Roll shall be done in accordance with the Membership Code, provided, that such removal is approved by at least a two-thirds (2/3) vote of the General Council.
Section 6. Appeals. Any person who has been rejected for enrollment or who has been removed from the tribal roll shall have the right to appeal to the Judiciary for a remedy in equity consistent with this Constitution.
ARTICLE III—ORGANIZATION OF THE GOVERNMENT
Section 4. Supremacy Clause. This Constitution shall be the supreme law over all territory and persons within the jurisdiction of the Ho-Chunk Nation.
TRIBAL ENROLLMENT AND MEMBERSHIP ACT OF 1995
Section 11. Removal.
(a) No Member shall be removed from the Official membership Roll without the approval of the General Council, according to Article II, Section 5 of the Constitution. PROVIDED, that the Tribal Enrollment Office may remove any member from the Official Membership Roll whom it has determined by clear and convincing evidence has obtained membership by an act of fraud, deceit, or misrepresentation, regardless of the length of time between such act and subsequent removal.
(b) Removal under this Section shall be retroactive to the date such fraud, deceit, or misrepresentation occurred.
Section 12. Appeals
(a) Any member, applicant or sponsor shall have the opportunity to appeal any action of the Office to the Committee on Tribal Enrollment. Such appeal shall be filed within sixty (60) days after the date on which the Tribal Enrollment Office publishes and posts notice of its final determination. The Committee shall within ten (10) days review and revise any finding *353 of fact or conclusion of law within the scope of the appeal. The Committee’s determination shall be deemed final for the purposes of judicial review.
(b) Any person or sponsor shall have the opportunity to appeal any final determination of the Committee to the Trial Court. Such appeal shall be filed within one hundred and eighty (180) days after the date the Committee issues its final determination. If such an appeal is made by a sponsor, the court’s determination shall not preclude the applicant upon becoming available or attaining capacity from filing a subsequent appeal.
INELIGIBLE TRIBAL MEMBER REMOVAL PROCEDURES
Section 1. Submission of Challenge
1.01 Identification of Proponent
The Office of Tribal Enrollment shall attempt to ascertain the identity of each and every individual who contacts the Office of Tribal Enrollment, either telephoni-cally or by written correspondence, alleging inadequate enrollment qualifications of a tribal member. No action shall be taken on anonymous allegations.
1.02 Affidavit Requirement
The Office of Tribal Enrollment shall request that the individual making the allegation, the proponent, submit an affidavit to the Office of Tribal Enrollment in support of the allegation. The Office of Tribal Enrollment shall also inform the proponent of the requirement that at least two (2) other individuals submit affidavits to the Office of Tribal Enrollment, substantiating the factual contentions within the proponent’s allegation. The proponent and any other individual submitting affidavits, the affiants, must be tribal members.
1.03 Form and Content of Affidavit
The affidavits shall state with particularity the grounds for the allegation, and be signed in the presence of a notary public. Formal rules of evidence shall not serve as a bar to considering any assertions contained within the affidavits. The Office of Tribal Enrollment shall devise and distribute a recommended affidavit form.
1.04 Ministerial Action
The Tribal Enrollment Officer shall submit a single affidavit in the event the Office of Tribal Enrollment discovers a ministerial error or oversight affecting the eligibility qualifications of a tribal member. The requirement for two substantiating affidavits shall be waived in this instance.
Section 2. Withholding of Benefits
2.01 Departmental Notification
•The Office of Tribal Enrollment shall direct the appropriate administrative departments to withhold per capita distributions and housing entitlements upon the receipt of the affidavits from the proponent and at least (2) other tribal members. No other tribally derived rights or entitlements shall be disturbed during the course of the removal procedures.
2.02 Treatment of Per Capita Distributions
The accumulated per capita distributions of the affected member shall be placed in an interest bearing account pending the resolution of the removal procedures. The withheld per capita distributions and accrued interest shall be payable to the affected member upon a final determination of eligibility by the Committee on Tribal Enrollment or the Ho-Chunk Nation Trial Court or in the event the General Council fails to vote on a negative final determination within one year following its issuance. The Nation shall receive the withheld per capita distributions and accrued interest upon approval by the General Council of a final determination of ineligibility.
*354 Section 3. Notice to Affected Member
3.01 Notice Requirements
The Office of Tribal Enrollment, shall notify the affected member by.-.first class mail of its receipt of the affidavits, the withholding of benefits and the scheduled date of a hearing before the Committee on Tribal Enrollment. The Office of Tribal Enrollment shall also inform the affected member of his/her right to be represented by counsel at the scheduled hearing. The notice shall be mailed within at least five (5) days after the receipt of the final required affidavit.:
3.02 Scheduling of Hearing
The hearing before the Committee on Tribal Enrollment shall occur within at least fifteen (15) days after the mailing of the notice to the affected member.
Section 4. Removal Hearing
4.01 Role of the Office of Tribal Enrollment
The Office of Tribal Enrollment, in furtherance of its statutory duty to maintain the Official Membership Roll, shall assist in the presentation of newly articulated or uncovered evidence, but shall not specifically advocate for the affiants unless acting pursuant-to Section 1.04.
4.02 Provision of Evidence
The Office of Tribal Enrollment shall provide copies of the affected member’s enrollment file and the challenging affidavits to the Committee on Tribal Enrollment and the affected member at least five (5) days prior to the scheduled removal hearing.
4.03 Participation of Affiants
The affiants shall attend the hearing unless excused for good cause as determined by the Committee on Tribal. Enrollment. The hearing may proceed, in the discretion of the Committee, despite the non-attendance of one or more affiants. The Committee on Tribal Enrollment may reschedule the removal hearing under extreme circumstances.
4.04 Chairperson to Preside
The Chairperson of the Committee on Tribal Enrollment shall preside over the hearing, and shall be responsible for controlling the presentation of evidence, appearance of witnesses, and the overall order of hearing.
4.05 Confidential Proceedings
The hearing and record of the hearing by the Committee on Tribal Enrollment will involve confidential and private matters and shall be closed to the public, unless the affected member requests in writing or on the record at the commencement of the hearing that the hearing be open. At a closed hearing, the Committee on Tribal Enrollment, the Enrollment Officer, and designated Enrollment staff, the affiants, and the affected member, and the counsel (if any) of each party may be present at all times. Witnesses, other than the forgoing persons, shall be present only when giving testimony.
4.06 Video Tape Record
The hearing shall be video taped in full and the tape retained by the Office of Tribal Enrollment not less than one year after the hearing. Tapes will not be released to any person, including the affected member, other than as required by the discovery rules applicable to any appeal of the Committee’s decision to the Ho-Chunk Nation Trial Court.
4.07 No Ex Parte Communication
The Office of Tribal Enrollment, the affected member and the affiants shall not communicate with any member or alternate of the Committee on Tribal Enrollment regarding any matter pertaining to the merits of the hearing.
*355 4.08 Conduct of Appeals Hearing.
The hearing shall be conducted as follows:
(i) The Enrollment Officer and/or his oilier designated staff shall present the evidence in documentary form or through witnesses.
(ii) The affected member shall then be given adequate opportunity to present evidence in documentary form or through witnesses, and confront the available affiants.
(iii) The Enrollment Officer or his or her designee or Attorney shall be provided with the opportunity to rebut any evidence presented by the affected member.
(iv) The Enrollment Officer and the affected member shall be given the opportunity to make a brief closing statement to the Committee on Tribal Enrollment.
4.09 Evidentiary Showing
The Office of Tribal Enrollment or the affiants, through the Office of Tribal Enrollment, must at a minimum, raise a reasonable suspicion that the affected member does not meet the established constitutional requirements for membership.
4.10 Rules of Evidence
Formal rules of evidence shall not apply at the hearing, but evidence which is irrelevant, cumulative or which would be unfair or prejudicial may be excluded by the Chairperson or may be admitted by the Chairperson under special conditions or stipulations. Basic rules of relevancy, materiality and probative force shall be used by the Chairperson as a guide to admissibility.
4.11 Witnesses.
Prior to giving any testimony, each witness shall be administered an oath or affirmation by the Chairperson. Testimony may be presented either in the form of questions and answers or by narrative statement of the witness. Each witness, upon completion of his or her direct testimony, may be crossed-examined first by the other party and then by any members of the Committee on Tribal Enrollment.
4.12 Official Notice
The Committee on Tribal Enrollment may take official notice of generally recognized facts or any established technical or scientific facts provided that it informs the Office of Tribal Enrollment, the affected member and the affiants of such matters and provides them with the opportunity to rebut any fact officially noticed.
4.13 Documentary Evidence.
Documentary evidence may be received in the form of copies or excerpts if the original is not readily available. Upon request, opportunity shall be granted to compare the copy to the original.
4.14 Record of Hearing
The record in a hearing shall include:
(i) Evidence presented at the hearing and any stipulation or admission entered into at the hearing.
(ii) The video tape record of the hearing.
Section 5, Committee on Tribal Enrollment Determinations
5.01 Timeline for Decision
The Committee on Tribal Enrollment shall deliver a decision at the hearing after the conclusion of the proceedings, and subsequently mail/deliver a written copy of the decision to the Office of Tribal Enrollment, the affected member and the affi-ants within two (2) days of the hearing.
*356 5.02 Voting
The Committee shall deeide the challenge by a majority vote with the Chairperson casting the deciding vote in the instance of a tie. Only primary members shall vote at the hearing unless excused by the Chairperson because of a conflict of interest in which case the alternate may serve in a voting capacity. A conflict of interest shall be defined in accordance with the Bylaws of the Committee on Tribal Enrollment.
5.03 Committee Decisions
The Committee may render any of the following decisions:
(i) The Committee on Tribal Enrollment may find the challenge to be frivolous and/or malicious, and therefore dismiss the challenge. The proponent: shall then be subject to the penalty structure below.
(ii) The Committee on Tribal Enrollment may find that the Office of Tribal Enrollment or the affiants, through the Office of Tribal Enrollment failed to meet the required evidentiary showing pursuant to Section 4.09.
(iii) The Committee on Tribal Enrollment may confirm an admission of the affected member that he/she does not fulfill the enrollment qualifications of the Ho-Chunk Nation.
(iv) The Committee on Tribal Enrollment may deem the affected member ineligible for tribal enrollment if documentary and/or testimonial evidence proves clear and convincing evidence that the affected member cannot claim Ho-Chunk lineage and a Ho-Chunk blood quantum of at least one-quarter (1/4). (a) The decision rendered under subsections (i) . through (iv) shall be considered final decisions lor purposes of judicial appeal.
(v)The Committee on Tribal Enrollment may order the affected member and the ancestor(s) needed to establish Ho-Chunk lineage to submit to a DNA analysis to be conducted by an independent testing laboratory chosen by the Ho-Chunk Nation.
Section 6. DNA Analysis and Findings
6.01 Testing Procedure
The affected member must coordinate the required testing with the Office of Tribal Enrollment in order to set testing times and locations for both him/her and the chosen ancestor(s).
6.02 Failure to Cooperate
The Committee on Tribal Enrollment will deem a failure of the affected member to cooperate with the Office of Tribal Enrollment or failure to submit to testing within a reasonable period of time as equivalent to an admission of ineligibility for membership under Section 5.03(v), unless the difficulty proves beyond the control of the affected member.
6.03 Testing Results
The DNA analysis results shall be delivered upon completion to the Committee on Tribal Enrollment from the independent testing laboratory. The Committee on Tribal Enrollment shall render a decision by majority vote in accordance with Section 5.02 based on the results within ten (10) days after receipt. The Committee on Tribal Enrollment shall mail/deliver a written copy of the decision to the Office of Tribal Enrollment, the affected member and the affiants within two (2) days of the decision. Such decision shall be deemed final for purposes of judicial review.
6.04 Standard of Proof
The Committee on Tribal Enrollment shall deem the affected member ineligible *357 for tribal enrollment only if the testing results indicate by clear and convincing evidence that the affected member cannot claim Ho-Chunk lineage and a Ho-Chunk blood quantum of at least one-quarter (1/4).
Section 7. Penalty Assessment
7.0 1 Membership Status Upheld
In the event the results of the DNA analysis confirm the eligibility of the affected member, the proponent shall reimburse the Office of Tribal Enrollment for the cost of the DNA testing, and compensate the affected member in the amount of $250.00.
7.02 Frivolous and/or Malicious Challenge
A finding of a frivolous and/or malicious challenge by the Committee on Tribal Enrollment shall subject the proponent to an award of damages to the Ho-Chunk Nation in the amount of $5,000.00 of which S250.00 shall be given to the affected member as restitution.
Section 8. Appeal to the Ho-Chunk Nation Trial Court
Any final determination of the Committee on Tribal Enrollment shall be appeal-able to the Ho-Chunk Nation Trial Court if such appeal is filed within ninety (90) days of the final determination.
Section 9. General Council Approval
9.01 Constitutional Role
The General Council must approve any final determination of ineligibility for membership status, administrative or judicial, by at least a two thirds (2/3) vote pursuant to the Constitution of the Ho-Chunk Nation, Art. II, Sec. 5, Membership Code.
9.02 Failure to Act
If the General Council fails to approve the final determination of ineligibility for membership status within one (1) year of the final determination, the affected member shall maintain membership status and no future challenges can be asserted against the individual in any forum.
HO-CHUNK NATION RULES OF CIVIL PROCEDURE
Rule 58. Amendment to or Relief from Judgment or Order.
(A) Relief from Judgment. A Motion to Amend, or for relief from judgment, including a request for a new trial shall be made within ten (10) calendar days of the filing of judgment. The Motion must be based on an error or irregularity which prevented a party from receiving a fair trial or a substantial legal error which affected the outcome of the action.
(B) Motion for Reconsideration. Upon motion of the Court or by motion of a party made not later than ten (10) calendar days after entry of judgment, the Court may amend its findings or conclusions or make additional findings or conclusions, amending the judgment accordingly. The motion may be made with a motion for a new trial. If the Court amends the judgment, the time for initiating an appeal commences upon entry of the amended judgment. If the Court denies a motion filed under this rule, the time for initiating an appeal from the judgment commences when the Court denies the motion on the record or when an order denying the motion is entered, whichever occurs first. If within thirty (30) days after the filing of such motion, and the Court does not decide a motion under this Rule or the judge does not sign an order denying the motion, the motion is considered denied. The time for initiating an appeal from judgment commences in accordance with the Rules of Appellate Procedure.
*358 (C) Motion to Modify. After the time period in which to file a Motion to Amend or a Motion for Reconsideration has elapsed, a party may file a Motion to Modify with the Court. The Motion must be based upon new information that has come to the party’s attention that, if true, could have the effect of altering or modifying the judgment. Upon such motion, the Court may modify the judgment accordingly. If the Court modifies the judgment, the time for initiating an appeal commences when the Court denies the motion on the record or when an order denying the motion is entered, whichever occurs first. If within thirty (30) calendar days after the tiling of such motion, and the Court does not decide the motion or the judge does not sign an order denying the motion, the motion is considered denied. The time for initiating an appeal from judgment commences in accordance with the Rules of Appellate Procedure.
(D) Erratum Order or Reissuance of Judgment. Clerical errors in a court record, including the Judgment or Order, may be corrected by the Court at any time.
(E) Grounds for Relief. The Court may grant relief tram judgments or orders on motion of a party made within a reasonable time for the following reasons: (1) newly discovered evidence which could not reasonably have been discovered in time to request a new trial; or (2) fraud, misrepresentation or serious misconduct of another party to the action; or (3) good cause if the requesting party was not personally served in accordance with Rule 5(c)(l)(a)(i) or (ii); did not have proper service and did not appear in the action; or (4) the judgment has been satisfied, released, discharged or is without effect due to a judgment earlier in time.
Rule 61. Appeals.
Any final Judgment or Order of the Trial Court may be appealed to the Ho-Chunk Nation Supreme Court. The Appeal must comply with the Ho-Chunk Nation Rules of Appellate Procedure, specifically Rules of Appellate Procedure, Rule 7, Right of Appeal. All subsequent actions of a final Judgment or Trial Court Order must follow the HCN Rules of Appellate Procedure.
DECISION
This case is an appeal from a decision removing a tribal member from the membership roll of the Ho-Chunk Nation. There are three enactments that govern the issue of removal of members: HCN Const. Art. II §§ 5, 6; the Tribal Enrollment and Membership Act of 1995 § 11; and the Ineligible Tribal Member Removal Procedures § 4. All these provisions address the issue of removal of members from the membership roll.
The HCN Constitution is supreme. HCN Const. Art. Ill, § 4. Therefore, the Court will first examine the constitutional provisions governing removal of members. The HCN Constitution contains three key principles governing removal of members: (1) “Removal of any person who is not eligible for membership from the Membership Roll shall be done in accordance with the Membership Code.” HCN Const. Art. II, § 5; (2) All removals must be “approved by at least a two-thirds (2/3) vote of the General Council.” HCN Const. Art. II § 5; (3) “Any person who has been ... removed from the tribal roll shall have the right to appeal to the Judiciary for.a remedy in equity consistent with this Constitution.” HCN Const. Art. II, § 6.
Since the HCN Constitution provides that removals “shall be done in accordance with the Membership Code”, HCN Const. Ait. II, § 5, the Court will first analyze the relevant provisions of the Tribal Enrollment and Membership Act of *359 1995. TEMA § 11 Removal, states as follows:
(a) No Member shall be removed from the Official Membership Roll without the approval of the General Council, according to Article II, Section 5 of the Constitution. PROVIDED, that the Tribal Enrollment Office may remove any member from the Official Membership Roll whom it has determined by clear and convincing evidence has obtained membership by an act of fraud, deceit, or misrepresentation, regardless of the length of time between such act and subsequent removal.
(b) Removal under this Section shall be retroactive to the date such fi’aud, deceit, or misrepresentation occurred.
Therefore, in order for a removal to meet the constitutional mandate of being “done in accordance with the Membership Code,” the removal must be approved by the General Council. HCN Const. Art. II, § 5. TEMA also provides the only statutory authority for the Tribal Enrollment Office to remove any member from the Official Membership Roll.[2] “The Tribal Enrollment Office may remove any member from the Official Membership Roll whom it has determined by dear and convincing evidence has obtained membership by an act of fraud, deceit, or misrepresentation, regardless of the length of time between such act and subsequent removal.” TEMA § 11. It is clear from the plain language of the statute that the only authority possessed by the Tribal Enrollment Office to remove a member is in cases of fraud, deceit or misrepresentation.
In addition to the HCN Constitution and TEMA, the Court must also look to the ITMRP. ITMRP § 4.09 provides that the “Office of Tribal Enrollment, must, at a minimum, raise a reasonable suspicion that the affected member does not meet the established constitutional requirements for membership.” ITMRP § 4.09. The ITMRP does not mention the statutory requirement of “fraud, deceit, or misrepresentation” as provided by TEMA § 11. However, taking the provisions of TEMA and ITMRP together, it is clear that in order to remove a member from the membership rolls, the Office of Tribal Enrollment must meet a two part eviden-tiary standard. In order for a member to be removed from the membership rolls, the following must be proved: (1) There müst be a “reasonable suspicion that the affected member does not meet the established constitutional requirements for membership.” ITMRP § 4.09, and (2) It must be shown “by clear and convincing evidence” that the member “has obtained membership by an act of fraud, deceit, or misrepresentation.” TEMA § 11. This is the only interpretation that will both uphold the constitutionally mandated three key principles governing removal of members, and give meaning to both TEMA and ITMRP.
In applying these evidentiary standards to this case, the Court is guided by the standard of review established by the Court in this case in the October 12, 1999 Order (Standard, of Review). The Court must determine “whether the decision is supported by substantial evidence and is not arbitrary, capricious or an abuse of discretion.” The “Substantial Evidence Rule” is the “principle that a reviewing *360 court should uphold an administrative body’s ruling, if it is supported by evidence on which the administrative body could reasonably base its decision.”[3]
The Court will first address the issue of whether it has been shown “by clear and convincing evidence” that the member “has obtained membership by an act of fraud, deceit, or misrepresentation.” Since the terms “fraud,” “deceit,” and “misrepresentation” are not defined in TEMA, the Court will begin with the definitions of those terms found in Black’s Law Dictionary. Fraud is defined as “A knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment.”[4] Deceit is defined as “The act of intentionally giving a false impression.”[5] Misrepresentation is defined as “The act of making a false or misleading statement about something, usually with the intent to deceive.” [6]
Since these proceedings began with the submission to the Tribal Enrollment Office of the October 26, 1998 Affidavit of Adam J. Hall, the Court will first determine if there were any allegations of “fraud, deceit, or misrepresentation” made in that Affidavit. The Court cannot find in the Affidavit of Adam J. Hall any allegation of conduct that could remotely be considered “fraud, deceit, or misrepresentation.”[7] Second, the Court will consider whether there were any factual findings of “fraud,” “deceit,” or “misrepresentation” made by the Tribal Enrollment Committee. The Court finds that there were none. Since the Court finds there was no evidence of fraud, deceit, or misrepresentation, the Court also finds that the decision of the Tribal Enrollment Committee to remove Ms. Hendrickson from the membership roll was not supported by substantial evidence.
Now that the Court has determined that the decision of the Tribal Enrollment Committee was not supported by substantial evidence, the Court will next determine whether the decision was “arbitrary, capricious or an abuse of discretion.” The Court will look to the definitions of those terms found in Black’s Law Dictionary. Arbitrary is defined as “founded on prejudice or preference rather than on reason or fact.” [8] Capricious is defined as “contrary to the evidence or established rules of law.”[9] Abuse of discretion is defined as “failure to exercise sound, reasonable, and legal decision-making.” [10] The decision of the Tribal Enrollment Committee was not supported by any evidence of “fraud, deceit, or misrepresentation.” Therefore, the decision was arbitrary, because it was not based upon “reason or fact.” Likewise, the decision is capricious because it was “contrary to the evidence.” Finally, the decision amounts to an abuse of discretion because making the decision to remove a member from the membership roll without receiving any evidence of “fraud, deceit, or misrepresentation” as required *361 by TEMA § 11, shows a “failure to exercise sound, reasonable and legal decision-making.” [11]
Because the Court has concluded that there was no substantial evidence of fraud, deceit, or misrepresentation, and that the petitioner was improperly removed from the membership roll of the Ho-Chunk Nation, the Court will not address the issue of whether there was substantial evidence that the petitioner does not meet the constitutional requirements for membership. The Office of Tribal Enrollment must prove both the existence of fraud, deceit or misrepresentation and the failure to meet the constitutional requirements for membership. Since there was no showing at all of fraud, deceit, or misrepresentation, there is no need to address the issue of whether the petitioner meets the constitutional requirements for membership.
CONCLUSION
The Court hereby exercises the power granted by HCN Const, art. II § 6, to render a “remedy in equity consistent with this Constitution.” The decision of the Tribal Enrollment Committee removing Theresa Lynn Hendrickson from the membership roll is reversed. The Court has determined that the decision was not supported by substantial evidence and was arbitrary, capricious and an abuse of discretion. Further, the Court enters the following Orders in order to implement and carry out the Court’s Judgment. These Orders are consistent with the HCN Constitution and are necessary to restore the petitioner to her rightful status as a member of the Ho-Chunk Nation.
ORDER
TIIE COURT HEREBY ORDERS the Ho-Chunk Nation Office of Tribal Enrollment to restore the name Theresa Lynn Hendrickson, DOB April 5, 1972 to the membership roll with the enrollment number 439A001171.
THE COURT FURTHER ORDERS the Ho-Chunk Nation Department of Treasury to release to the petitioner all her per capita distributions from February 1, 1999 through the date of this Judgment, along with five per cent (5%) interest on each payment from the time it was originally due. These funds were to have been held in an interest bearing account pending the outcome of this action according to ITMRP § 2.01 and the October 12, 1999 Order (Standard of Review) previously entered herein. The petitioner shall be entitled to receive all future per capita distributions in the same manner as all other members of the Ho-Chunk Nation.
RIGHTS OF THE PARTIES
The parties retain the right to file a timely post judgment motion with this Court in accordance with HCN R. Civ. P. 58, Amendment to or relief from. Judgment or Order. Otherwise, “[a]ny final Judgment or Order of the Trial Court may be appealed to the Ho-Chunk Nation Supreme Court.[12] The Appeal must comply *362 with the Ho-Chunk Nation Rulen of Appellate Procedure [hereinafter HCN R.App. P.], specifically [HCN R.App. P. |, Rule 7, Right of Appeal.” HCN R. (dr. P. 61. The appellant “shall within thirty (30) calendar days after the day such judgment or order was rendered, file with the [Supreme Court] Clerk of Court, a Notice of Appeal from such judgment or order, together with a filing fee of thirty-five dollars ($35 U.S.).” HCN R.App. P. 7(b)(1). “All subsequent actions of a final Judgment or Trial Court Order must follow the [HCN R.App. HCN R. Civ. P. 01.
IT IS SO ORDERED this August f>, 2002 at the Ho-Chunk Nation Courthouse in Black River Falls, Wisconsin from within the sovereign lands of the Ho-Chunk Nation.

. This case originally was heard by Chief Judge, Mark Butterfield. Judge Butterfield left office on March 7, 2002, prior to rendering a decision in this case. Subsequently, the case was assigned to Chief Judge William Boss-man, who enters this Judgment after a careful examination of the entire record in this case.

. Any action taken by the Tribal Enrollment Office to remove a member from the official roll would still be subject to the constitutional provision that such removal must be "approved by at least a two-thirds (2/3) vote of the General Council.” HCN Constitution, Art 11 § 5.

. Black’s Law Dictionary 1442 (7th ed.1999)

. Id. at 670.

. Mat 413.

. Id. at 1016.

. In fact, in its Answer to the Petition for Review, the defendants admitted to the allegation that ‘‘Neither the Removal Affidavit nor the Notice of Removal Hearing allege that the petitioner or any other person, engaged in fraud, deceit or misrepresentation in connection with the petitioner’s enrollment application.”

. Id. at 100.

. Id. at 203.

. Id: at 10.

. The Court is aware that the Tribal Enrollment Committee based its decision solely upon ITMRP rather than on both ITMRP and TEMA. It is an understandable error because ITMRP as a procedural code intended to guide the Office of Tribal Enrollment in the implementation of TEMA, should be expected to incorporate all substantive law found in TEMA. In no way does the Court believe that the Committee intentionally ignored established laws.

. The Supreme Court earlier emphasized that it "is not bound by the federal or state laws as to standards of review." Louella A. Kelly v. Jonette Pettibone et al., SU 99-02 (HCN S.Ct., Sept. 24, 1999) at: 2. The Supreme Court, therefore, has voluntarily adopted an abuse of discretion standard "to *362 determine if an error of law was made by the lower court.” Daniel Youngthunder, Sr. v. Jonette Pettibone et al., SU 00-05 (HCN S.Ct., July 28, 2000) at 2; see also Coalition for a Fair Gov't II v. Clitoris A. Lowe, Jr. et al., SU 96-02 (HCN S.Ct., July 1, 1996) at 7-8; and JoAnn Jones v. Ho-Chunk Nation Election Bd. et al., CV 95-05 (HCN S.Ct,, Aug. 15, 1995) at 3. The Supreme Court accepted the following definition of abuse of discretion: “any unreasonable, unconscionable and arbitrary action taken without proper consideration of facts and law pertaining to the matter submitted. Youngthunder, Sr., SU 00-05 at 2 (quoting Black’s Law Dictionary 11 (6th ed. 1990)). Regarding findings of fact, the Supreme Court has required an appellant to ' ‘demonstrate!] clear error with respect to the factual findings of the trial court." Coalition II, SU 96-02 at 8; but see Anna Roe Funmaker v. Kathryn Doornbos, SU 96-12 (HCN S.Ct., Mar. 25, 19971 at 1-2.